**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Wagner, | No. CV-22-08188-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 16), the Commissioner's answering brief (Doc. 20), and Plaintiff's reply brief (Doc. 21), as well as the Administrative Record (Doc. 15, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I. Procedural History

On March 19, 2018, and January 28, 2019, Plaintiff filed applications for benefits, in both instances alleging disability beginning on October 1, 2017. (AR at 18.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On April 14, 2020, the ALJ held a telephonic hearing. (*Id.*) Following the hearing, the ALJ requested and received additional evidence, including a consultative examination. (*Id.*) On July 30, 2021, the ALJ held a supplemental telephonic hearing, but

"[d]ue to difficulties connecting with the vocational expert scheduled for the hearing," the ALJ "held the record open so interrogatories could be obtained and submitted from a vocational expert." (*Id.* at 19.) Finally, on September 29, 2021, after considering those interrogatories and offering Plaintiff a chance to respond (which Plaintiff declined), the ALJ issued an unfavorable decision. (*Id*. at 18-31.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.   The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate

to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and had the following severe impairments: "lumbar and thoracic degenerative disc disease, degenerative joint disease of the bilateral hips, peripheral neuropathy, cirrhosis, hepatic steatosis, macrocytic anemia and thrombocytopenia secondary to chronic liver failure, and obesity." (AR at 21.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 21-24.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is able to lift and carry twenty pounds occasionally and ten pounds frequently, sit about six hours out of an eight-hour day, and stand and/or walk about four hours out of an eight-hour day. He can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme temperatures, vibration, and hazards, including moving machinery and unprotected heights.

(*Id.* at 24.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent

---

[1] The ALJ also noted that that Plaintiff had the non-severe impairments of hypertension, alcoholic encephalopathy, hypothyroidism, colitis, and left shoulder degenerative joint disease. (AR at 22.)

with the medical evidence and other evidence in the record during the relevant time period for the reasons explained in this decision." (*Id.* at 25.) The ALJ also evaluated opinion evidence from various medical sources as follows: (1) Dr. D. Subin, state agency medical consultant ("persuasive"); (2) Dr. A. Dipsia, state agency medical consultant ("persuasive"); (3) Dr. Karine Lanca, state agency medical consultant ("persuasive"); (4) Dr. Azizollah Karamlou ("persuasive"); (5) Dr. Glenn Kunsman ("less persuasive"); and (6) Dr. Jennifer auf der Springe ("not persuasive"). (*Id.* at 27-29.)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was unable to perform his past relevant work as a merchandise deliverer or regional manager, he was capable of performing other jobs that exist in significant numbers in the national economy, including office manager, sales manager, and personnel recruiter. (*Id.* at 29-31.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 31.)

IV. Discussion

Plaintiff presents three issues on appeal: (1) whether the ALJ "failed to properly evaluate [his] transferrable skills under [SSR] 82-41"; (2) whether the ALJ "failed to apply the proper legal standard when evaluating [his] obesity in accordance with SSR 19-2p"; and (3) whether the ALJ's "hypothetical presented to the [vocational expert] neglected to include all limitations supported by evidence." (Doc. 16 at 2.) As a remedy, Plaintiff seeks a remand for calculation of benefits or, in the alternative, a remand for additional proceedings. (*Id.* at 14.)

    A. **Transferable Skills**

        1. The ALJ's Analysis

During steps four and five of the sequential analysis, the ALJ made various findings regarding Plaintiff's past work. As an initial matter, the ALJ stated that Plaintiff "has past relevant work as a merchandise deliverer (DOT 299.477-010; medium as generally performed, heavy as actually performed; SVP 2) and a composite job consisting of regional manager (DOT 183.117-010; sedentary as generally performed; SVP 8) and merchandise deliverer (DOT 299.477-010; medium as generally performed; SVP 2) that was performed

as skilled (SVP 8) work at the heavy exertional level.  As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period." (AR at 29.)

On the one hand, the ALJ accepted the vocational expert's opinion that "the exertional limitations included in [Plaintiff's RFC] precluded him from performing any of his past relevant work." (*Id*.)  On the other hand, the ALJ concluded that Plaintiff had "acquired work skills from [his] past relevant work"—specifically, the ALJ concluded that Plaintiff's past work "required the following skills: training, record keeping, supervision, planning, customer service, cost control, personnel management, and marketing management." (*Id.* at 30.)  Accordingly, for step-five purposes, the ALJ asked the vocational expert "if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and [RFC] as [Plaintiff], and which require skills acquired in [Plaintiff's] past relevant work but no additional skills." (*Id.*)  The ALJ responded by identifying three such jobs that exist in significant numbers in the national economy: office manager, sales manager, and personnel recruiter. (*Id.*)

2. The Parties' Arguments

Plaintiff argues that "[d]espite the fact that there was no supporting evidence in the record, the [vocational expert] determined that [he] had several transferrable skills including training, record keeping, supervision, planning, customer service, cost control, and marketing management." (Doc. 16 at 5.)  Plaintiff argues that this determination was erroneous because "there is no evidence that [he] had any prior experience in sales.  Neither the ALJ, nor the [vocational expert], indicated which skills transferred to which job. Additionally, the 9th Circuit has already held that 'customer service skills' is too vague to constitute a transferrable skill.  Thus, it is far from clear that [he] could perform the job of office manager, sales manager or personnel recruiter with 'very little, if any, vocational adjustments in terms of tools, work processes, work setting, or the industry.'" (*Id.*at 7, quoting AR 30-31.)

The Commissioner responds that "[t]he ALJ properly considered Plaintiff's

transferable skills." (Doc. 20 at 2.) According to the Commissioner, Plaintiff's own testimony during the hearing provided the necessary foundation for the ALJ's finding, as Plaintiff testified that he worked as a driver and then regional manager of a company called Tradewinds Enterprises for 10 years and had "very numerous" job duties during that period, including attending to emails, scheduling vacations, hiring and firing, interviewing, and training. (*Id.* at 2-3.) The Commissioner also notes that the three jobs identified by the vocational expert during step five (*i.e.*, office manager, sales manager, and personnel recruiter) "all have an SVP [specific vocational preparation level] of 8 or below, which is at or below the same SVP of Plaintiff's past relevant work as a Regional Manager at Tradewinds," and argues that this equivalency is significant because, under SSR 82-41, "[t]he relevant question is not whether Plaintiff performed the specific duties of the job, but whether he possessed the skills necessary to perform that job. Here, the evidence establishes that he did." (*Id.* at 4-5.)

In reply, Plaintiff argues that "[t]he law is very clear that when a finding is made that a claimant has transferrable skills, the acquired skills <u>must</u> be identified and specific occupations to which the acquired work skills are transferrable <u>must</u> be cited in the ALJ's decision." (Doc. 21 at 3.) Plaintiff contends that, here, "neither the [vocational expert], nor the ALJ specified which skills transferred to which job" and that the vocational expert's "testimony conflicts with the duties [Plaintiff] actually performed in his past relevant work, including sales experience." (*Id.* at 3-4.) Plaintiff also accuses the Commissioner of "mistakenly believ[ing] that because [he] previously performed skilled work, that it does not matter what skills transfer to what jobs, as long as those jobs are also skilled." (*Id.* at 4.)

3.     Analysis

The Court finds no harmful error in the ALJ's evaluation of transferable skills. "SSR 82-41 states, in relevant part . . . [that when] a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ's decision." *Bray*

*v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1223 (9th Cir. 2009) (cleaned up). "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Id.* at 1224 (citation omitted). Although "the SSR presumes that ALJs will be relying on expert testimony to determine whether a claimant has transferable skills . . . [i]t is the ALJ, and not the VE, who is responsible for making findings." *Id.* at 1225.

Here, as an initial matter, the ALJ followed the procedural requirements imposed by SSR 82-41 and made the findings required by SSR 82-41. In the underlying decision, the ALJ specifically identified the transferable skills that Plaintiff had acquired from his past work (*i.e.*, "training, record keeping, supervision, planning, customer service, cost control, personnel management, and marketing management") and specifically identified the occupations to which those skills were transferrable (*i.e.*, office manager, sales manager, and personnel recruiter). (AR at 30.) Those are the findings that SSR 82-41 requires. *Compare Barnes v. Berryhill*, 895 F.3d 702, 705 (9th Cir. 2018) ("Although Barnes's past relevant work included a skilled job, the ALJ made no finding regarding what skills, if any, Barnes had acquired from that work and whether his skills were transferable to semi-skilled work as a 'semi-conductor assembler' or 'production clerk.' The ALJ therefore erred by failing to make the written findings required by SSR 82-41.").

The ALJ's findings on these points were also supported by substantial evidence. During the hearing, Plaintiff testified that he previously worked for 10 years at Tradewinds Enterprises (which is in the business of delivering radioactive pharmaceuticals); that his last role at Tradewinds Enterprises, which he held for five years, was "Southern California Regional Manager"; and that his duties or tasks in that role were "[v]ery numerous" and included "[e]mails, scheduling vacations, hiring, firing, interviewing, training, and just the general—just to overlook how the company was run and to run it efficiently, as far as Southern California was concerned." (AR at 46-47.) The vocational expert, in turn, opined that the corresponding DOT title and code for that job was 183.117-010, Regional Manager, with an SVP of 8. (AR at 428.) The vocational expert further opined that Plaintiff had obtained the following "[a]quired job skills" from that job: "Training, record

1 keeping, supervision, planning customer service, cost control, personnel management, marketing management." (AR at 430.) Finally, the vocational expert opined that the jobs of office manager, sales manager, and personnel recruiter each qualify as an "occupation to which the skills transfer that the individual could perform." (*Id.*)

There is a colorable argument that, because the ALJ was entitled to rely on the VE's undisputed testimony on these topics, the ALJ's resulting decision was necessarily supported by substantial evidence. *See, e.g., Ramirez v. Comm'r of Soc. Sec. Admin.*, 463 F. App'x 640, 643 (9th Cir. 2011) ("[T]he ALJ properly relied on the vocational expert's testimony at the second hearing concerning plaintiff's past relevant work, the transferability of skills to the semiskilled position of 'information clerk,' and her ability to perform unskilled work as an 'interviewer.'"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) ("The VE testified that [Mr. Osenbrock's past work] experience qualified Mr. Osenbrock to work as a timekeeper. The fact that Mr. Osenbrock did not testify that he had worked as a timekeeper is not dispositive of the transferability of his existing skills to the position of timekeeper. . . . Here, the VE testified that transferring from the position of mill supervisor to that of timekeeper would be a move from skilled to semi-skilled work. The VE testified that the duties Mr. Osenbrock performed as a mill manager were similar to those required of a timekeeper. Substantial evidence supported the ALJ's finding that Mr. Osenbrock's prior work experience qualified him to perform the duties of a timekeeper."). *See generally Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").[2]

---

[2] *See also Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1019 (D. Ariz. 2019) ("The ALJ's transferability determination was supported by the vocational expert's testimony, which is itself substantial evidence sufficient to uphold the ALJ's decision."); *Spencer v. Berryhill*, 2018 WL 4006528, *15 (C.D. Cal. 2018) (citing *Osenbrock* for the proposition that "uncontradicted evidence by VE of transferable skills constitutes substantial evidence"); *Myers v. Comm'r of Soc. Sec. Admin.*, 2016 WL 4157206, *4 (D. Or. 2016) ("The ALJ is entitled to rely on the VE or other specialist if there is an issue in determining whether a claimant's work skills can be used in other work. At the administrative hearing, the ALJ asked the VE whether 'there would be transferable skills from [Myers's] past work into [Myers's RFC] that would not require significant vocational readjustment.' The VE answered in the affirmative, identified the occupation of telephone solicitor, and described Myers's transferable skills that applied to this work.

Nevertheless, even if a more searching inquiry into the foundation for the vocational expert's opinions is required, the Court still finds no harmful error. The VE opined, and Plaintiff does not appear to dispute on appeal, that the best analogue in the DOT for his prior work as a Southern California Regional Manager for Tradewinds Enterprises was the job of Regional Manager, DOT 183.117-010. That DOT listing, in turn, states that this job has an SVP of 8 and involves the following tasks: "Confers with customers and representatives of associated industries to evaluate and promote improved and expanded services in area. Develops plans for efficient use of materials, machines, and employees. Reviews production costs and product quality, and modifies production and inventory control programs to maintain and enhance profitable operation of division. Reviews operations of competing organizations, and plans and directs sales program to develop new markets, using sales aids, advertising, promotional programs, and field services. Directs personnel program. Directs preparation of accounting records. Recommends budgets to management." *Id.* It was rational for the vocational expert to opine (AR at 430), and for the ALJ to conclude (AR at 30), that Plaintiff's performance of this job for five years shows that he possesses the skills of training, record keeping, supervision, planning customer service, cost control, personnel management, and marketing management.

It was also rational for the vocational expert to opine (AR at 430), and for the ALJ to conclude (AR at 30), that the aforementioned skills would be transferrable to the positions of office manager, sales manager, and personnel recruiter. All of those positions require SVPs at or below the SVP of 8 associated with Plaintiff's prior work as a Regional Manager. *Osenbrock*, 240 F.3d at 1163 (emphasizing that, under SSR 82-41, "transferability . . . is most probable and meaningful among jobs in which . . . the same or a lesser degree of skill is required . . . (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job) . . . ."). *Cf. Solomon*, 376 F. Supp.

---

The ALJ was entitled to conclude based on the VE's testimony that Myers retained the ability to perform work that exists in the national economy.") (citations omitted). *But see Frost v. Berryhill*, 2018 WL 1509197, *8 (D. Or. 2018) (rejecting the Commissioner's argument that "reliance on VE testimony is sufficient" when it comes to transferable-skills findings).

1 3d at 1019 ("The Court further notes that the DOT descriptions for the jobs of project estimator [new occupation] and civil engineer [past work] contain several similarities. For example, and as the vocational expert testified, both occupations involve pricing skills. Additionally, a project estimator '[a]nalyzes blueprints, specifications, proposals, and other documentation to prepare time, cost, and labor estimates,' and a civil engineer '[p]repares or directs preparation and modification of reports, specifications, plans, construction schedules, environmental impact studies, and designs for project.' Moreover, 'civil engineer' has [an SVP] Level of 8, whereas 'project estimator' only has an SVP Level of 7, meaning that the project estimator occupation requires a lesser degree of skill."); *Spencer*, 2018 WL 4006528 at *15 ("[A] plain reading of the DOT demonstrates the multiple similarities between Plaintiff's past work as a telemarketer and the appointment clerk occupations. Contrary to Plaintiff's argument, the mere fact that the positions have some differences and do not have identical skill sets does not undermine the ALJ's transferability finding.") (citations omitted).

B. **Obesity**

1. The Parties' Arguments

Plaintiff argues that the ALJ violated SSR 19-2p by failing to consider all of the functional limitations caused by his obesity. (Doc. 16 at 7-10.) More specifically, Plaintiff contends that the ALJ only considered the effect of his obesity on his "pulmonary, musculoskeletal, endocrine, or cardiac functioning" and thus failed to address the effect of his obesity (in combination with his other impairments) "on his ability to sit for long periods of time" and/or on his "ability to sustain physical and mental function over time." (*Id.* at 8-9.)

The Commissioner disagrees and defends the sufficiency of the ALJ's reasoning. (Doc. 20 at 6-7.) According to the Commissioner, SSR 19-2p merely requires an "individualized assessment" of the impact of obesity on each claimant and the ALJ provided such an individualized assessment here. (*Id.*)

In reply, Plaintiff argues that the Commissioner "does not dispute that the ALJ failed

to address 1) the impact [his] obesity, combined with neuropathy and lumbar DDD, has on his ability to sit for long periods of time; and 2) the impact [his] obesity has on his ability to sustain physical and mental function over time." (Doc. 21 at 4-5.)

### 2. Analysis

The Court finds no harmful error in the ALJ's obesity-related analysis. Under SSR 19-2p, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and, "[a]s with any other impairment, [must] explain how [the ALJ] reached [his or her] conclusion on whether obesity causes any limitations." *See* Social Security Ruling 19-2p, 2019 WL 2374244, *1 (2019).

The ALJ satisfied those requirements here. During step two of the sequential analysis, the ALJ specifically acknowledged Plaintiff's obesity and identified it as a "severe" impairment. (AR at 21.) During step three, the ALJ "acknowledged the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 19-2p" but concluded that "there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. Therefore, the claimant's obesity does not meet or equal a listing. The claimant's weight, including the impact on his ability to ambulate as well as his other body systems, has been considered within the limitations of the claimant's [RFC] described below." (*Id.* at 24.) Finally, during step four, the ALJ again acknowledged Plaintiff's obesity but identified various reasons why Plaintiff's related symptom testimony was unworthy of credence. (*See, e.g.*, *id.* at 27-28 ["Medical imaging revealed . . . the claimant was frequently obese, he frequently had reduced sensation and diminished reflexes in his lower extremities, and he occasionally had a reduced range of motion in his back and used a wheelchair. However, the claimant admitted to being noncompliant with his medications, refused any pain management, frequently had a normal or only slightly abnormal gait without an assistive device, and frequently had full strength and otherwise intact sensation and reflexes throughout."]; *id.* at 29 ["Although the claimant was obese for most of the relevant period, occasionally used a wheelchair, and had decreased sensation in his lower extremities, he

frequently had a normal or slightly abnormal gait without an assistive device and full strength and otherwise normal sensation and reflexes throughout and his symptoms improved with conservative treatment."].) This analysis was sufficient to comply with SSR 19-2p. *See, e.g., Keyes v. Comm'r of Soc. Sec.*, 2023 WL 2166917, *5 (E.D. Cal. 2023) ("SSR 19-2p repeatedly refers to 'considering' a person's obesity in connection with the other steps of the sequential process. Unlike other social security authority, nothing in SSR 19-2p requires an ALJ to articulate specific findings regarding any impairment.") (citations omitted); *Montagna v. Kijakazi*, 2022 WL 565601, *4 (W.D. Tenn. 2022) ("SSR 19-2p only requires that obesity be considered and that the conclusion reached regarding its effects be explained."); *Kelsey K. v. Acting Comm'r of Soc. Sec.*, 2022 WL 2302584, *3 (W.D. Wash. 2022) ("Plaintiff argues the ALJ failed to follow [SSR] 19-2p. Yet the ALJ considered the plaintiff's obesity at step two and found that it was a severe, medically determinable impairment; the ALJ also considered obesity at step three—and noted that no medical source had concluded that plaintiff's obesity equaled a listed impairment. When deciding plaintiff's RFC, the ALJ also considered the effects of obesity (in combination with other impairments). According to SSR 19-2p, this was not error.").

    C.    **Hypothetical To Vocational Expert**

        1.    <u>The Parties' Arguments</u>

Plaintiff's final argument is that the ALJ's hypothetical to the vocational expert "failed to include all of [Plaintiff's] limitations supported by the record." (Doc. 16 at 11.) More specifically, Plaintiff argues that various medical records show "there are objective medical findings explaining [his] chronic back and left shoulder pain" and that it was therefore "unreasonable to assume that an individual with these severe impairments would be able to sit for six (6) hours a day, and be able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl for more than two and a half (2.5) hours a day. In short, the ALJ failed to properly assess all of [his] impairments in determining the degree of [his] functional loss." (*Id.* at 12-13.)

In response, the Commissioner defends the sufficiency of the ALJ's analysis. (Doc.

20 at 8-11.) The Commissioner notes that the ALJ determined that Plaintiff's degenerative back impairments were "severe" during step two, limited Plaintiff to sedentary work activity, and also considered Plaintiff's left-shoulder joint disease. (*Id.* at 8.) More broadly, the Commissioner notes that ALJ considered all of the objective medical evidence in compliance with the applicable regulations and permissibly considered that Plaintiff was able to manage his impairments through conservative treatment, "was able to work for almost 20 years with the back pain he now alleges to be disabling," and was non-compliant with prescribed medications and courses of treatment. (*Id.* at 8-10.) Accordingly, as for Plaintiff's argument that "the ALJ's hypothetical to the vocational expert [was] not based upon substantial evidence because it did not include his subjective allegations," the Commissioner contends this argument is flawed because "limitations from properly discounted evidence need not be included in the RFC finding." (*Id.* at 10-11.)

In reply, Plaintiff contends that the Commissioner "did not deny that the ALJ's RFC finding failed to include all of [his] claimed limitations" and reiterates his earlier arguments regarding the objective medical evidence. (Doc. 21 at 6-7.)

2. <u>Analysis</u>

The Court finds no harmful error in the ALJ's formulation of the hypothetical to the vocational expert. At bottom, Plaintiff argues that it was error for the ALJ to conclude as part of the RFC-formulation process (AR at 24), and then ask the vocational expert to assume (AR at 429), that Plaintiff would be able to sit for six hours a day and be able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. However, several medical sources opined that those were appropriate exertional limitations. (*Id.* at 80-81 [Dr. Subin]; *id.* at 110-11 [Dr. Dipsia]; *id.* at 116-17 [Dr. Lancaster]; *id.* at 443-44 [Dr. Karamlou].) The ALJ, in turn, deemed all of those medical sources' opinions "persuasive." (*Id.* at 27-28.) Notably, Plaintiff does not challenge, on appeal, the ALJ's evaluation of those medical sources' opinions. Nor does Plaintiff challenge, on appeal, the ALJ's rationale for discrediting his symptom testimony. It follows that Plaintiff cannot demonstrate error in the ALJ's formulation of the RFC or resulting hypothetical to the

vocational expert. *Sayer v. Kijakazi*, 2022 WL 1153944, *1 (9th Cir. 2022) ("Because the ALJ permissibly weighed Sayer's testimony, Sayer's challenges to the ALJ's residual functional capacity determination likewise fail."). *See generally Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 & n.2 (9th Cir. 2009) (properly discredited evidence need not be included in RFC).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 5th day of December, 2023.

_____
Dominic W. Lanza
United States District Judge